285 N.J. Super. 377 (1994)
667 A.2d 1
SOUTH BRUNSWICK ASSOCIATES, PLAINTIFF,
v.
TOWNSHIP COUNCIL OF THE TOWNSHIP OF MONROE, DEFENDANT.
Superior Court of New Jersey, Law Division Civil Part Middlesex County.
Decided May 17, 1994.
*378 Thomas R. Farino, Jr., for plaintiff.
*379 Joel L. Shain, for defendant (Shain, Schaffer & Rafanello, attorneys; Todd R. Staretz, on the brief).
BERMAN, J.S.C.
The novel issue presented is whether a Township Council President can appear before a local Zoning Board of Adjustment on behalf of concerned citizens in opposition to a variance, and subsequently participate in the Township Council's quasi-judicial review of the zoning board's decision. The court holds that he cannot, vacates the council's determination, and remands the matter to the council to reconsider the appeal within thirty days without the participation of its President.
The matter arises as follows:
Plaintiff South Brunswick Associates (SBA) applied to the Monroe Township Zoning Board of Adjustment (the Board) for a use variance to permit the construction of three office warehouses. The Board held three public hearings on the application. During the June 29, 1993 hearing, Henry L. Miller, the Monroe Township Council President (Miller), appeared before the Board, stating "I am here representing at the request of the people who live near this property ... [a]nd I wish to make expressions of concern about that property and how it will be used ... I am asking you officially to oppose this application." (emphasis added). The Board approved SBA's variance on August 31, 1993, by a five to two vote.
Subsequently, a group calling themselves "The Concerned Citizens and Taxpayers of Monroe" filed a notice of appeal with the Township Council of the Township of Monroe. (The Governing Body) pursuant to N.J.S.A. 40:55D-17. On December 6, 1993, the Governing Body, with Miller participating upon advice of counsel, conducted a public hearing regarding the appeal of the variance. At the conclusion of the hearing, the Governing Body voted five to zero to reverse the Board's approval of the variance.
*380 Although the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -136, regulates the appeal of local zoning board decisions to local governing bodies, it does not address the ethical standards which local governing bodies must observe when they function in such a role. The Local Government Ethics Law, N.J.S.A. 40A:9-22.1 to -22.25 sets minimum ethical standards which local government officers must observe. N.J.S.A. 40A:9-22.5h states:
No local government officer ... shall represent any person or party other than the local government in connection with any cause, proceeding, application or any other matter pending before any agency in the local government in which he serves.[1]
This language is modified by N.J.S.A. 40A:9-22.5i which states:
No local government officer shall be deemed in conflict with these provisions if, by reason of his participation in the enactment of any ordinance, resolution or other matter required to be voted upon or which is subject to executive approval or veto, no material or monetary gain accrues to him as a member of any business, profession, occupation or group to any greater extent than any gain could reasonably be expected to accrue to any other member of such business, profession, occupation or group.
Miller's representation of other citizens before the Board violates the unequivocal language of N.J.S.A. 40A:9-22.5h. The record does not indicate that he was representing the local government, and the statute does not require that the prohibited representation be compensated.
Miller's conduct would be permissible under N.J.S.A. 40A:9-22.5i if the representation were regarding the "enactment of any ordinance, resolution or other matter required to be voted upon or which is subject to executive approval or veto." Id. (emphasis added). However, this language suggests legislative, not quasi-judicial action.[2] If the Legislature intended to allow public officials *381 to represent others in quasi-judicial proceedings, it could have stated that public officials may participate in any proceeding which would not result in material or monetary gain to them. Cf. N.J.S.A. 40A:9-22.5i.
The impropriety of Miller's representation aside, the more fundamental issue presented is whether a council member can ever appear as an advocate before a local public agency engaged in a quasi-judicial role and subsequently participate in a governing body's review of the agency's decision. N.J.S.A. 40A:9-22.5d provides that:
No local government officer ... shall act in his official capacity in any matter where he ... has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment....
The question is whether such an appearance before the Board creates "a direct or indirect ... personal involvement that might reasonably be expected to impair his objectivity or his independence of judgment...." Ibid.
N.J.S.A. 40A:9-22.5d is substantially a codification of the common-law conflict of interest standard.[3] The Supreme Court has held that the common-law standard allows a public official to vote in a quasi-judicial proceeding regarding a particular variance despite public remarks he made regarding that variance during an election campaign. Kramer v. Board of Adjustment of Sea Girt, 45 N.J. 268, 282-83, 212 A.2d 153 (1965). On the other hand, a financial interest, such as one created by a part-time mayor's *382 representation of a client before a local board of adjustment, does constitute a conflict which would normally invalidate the board's vote on a variance. Place v. Board of Adjustment of Saddle River, 42 N.J. 324, 332-33, 200 A.2d 601 (1964).
Other jurisdictions have addressed issues similar to the one sub judice, and the majority hold that a public official cannot appear in support of or opposition to a particular application before a local public agency engaged in a quasi-judicial function and subsequently participate in a vote of another public agency's review of the same matter. In Lage v. Zoning Board of Appeals of Town of Madison, 148 Conn. 597, 172 A.2d 911 (1961), the participation of a member of the Zoning Board of Appeals in its review of a Town Planning and Zoning Commission's decision to deny a variance tainted the Board's vote since the member appeared before the Commission in support of the variance. Id. 172 A.2d at 914. In Acierno v. Folsom, 337 A.2d 309 (Del. 1975), statements made by the Chairman of the Planning Board at the County Council's review of the Planning Board's denial of a variance precluded the Chairman's subsequent participation in the Planning Board's review of a subdivision upon remand, and his participation in that review tainted the Planning Board's subsequent vote. Id. at 311. The appearance of a town supervisor before a zoning hearing board to oppose a particular variance and his subsequent participation in the Governing Body's review of the Zoning Board's decision was held to invalidate the Town Supervisors' review in Thornbury Township Board of Supervisors v. W.D.D. Inc., 119 Pa.Cmwlth. 74, 546 A.2d 744, 746-47 (1988). See also Weiner v. Board of Supervisors of Lower Macungie Township, 119 Pa. Cmwlth. 485, 547 A.2d 833, 838 (1988) (Town Supervisor's appearance before Zoning Board in opposition to specific variance would preclude her from voting in review of Board's decision), cf. McVay v. Zoning Hearing Board of New Bethlehem Borough, 91 Pa. Cmwlth. 287, 496 A.2d 1328, 1330 (1985) (zoning board members who signed petition in opposition to particular rezoning disqualified from quasi-judicial review of corresponding variance application). Conversely, in Webster Associates v. Town of Webster, 112 *383 Misc.2d 396, 447 N.Y.S.2d 401 (N.Y. App. Div. 1981), a town supervisor who expressed support for a particular project during a planning board hearing was permitted to act in subsequent quasi-judicial proceedings regarding that project. Id. 447 N.Y.S.2d at 409. Although Webster Associates reaches a result contrary to the majority, it is slightly distinguishable since the Town Supervisor was allegedly provoked into making the comments of support. Id. 447 N.Y.S.2d at 409.
The majority rule is more consonant with New Jersey's common-law principles. Our Supreme Court recently summarized these principles:
An actual conflict of interest is not the decisive factor, nor is "whether the public servant succumbs to the temptation," but rather whether there is a potential for conflict ... A conflicting interest arises when the public official has an interest not shared in common with the other members of the public. Another way of analyzing the issue is to understand that "[t]here cannot be a conflict of interest where there do not exist, realistically, contradictory desires tugging the official in opposite directions."
[Wyzykowski, supra, 132 N.J. at 524, 626 A.2d 406 (citations omitted)]
These principles support an interpretation of N.J.S.A. 40A:9-22.5d which prohibits an official from appearing before a quasi-judicial proceeding of a local public agency and subsequently participating in an appellate review of that agency's decision. Quite simply, an appearance advocating a particular position before a quasi-judicial tribunal evidences a degree of personal involvement which is incompatible with an impartial review of that tribunal's determination. Concedingly, such conduct may not appear much more indicative of prejudgment of a variance than public statements made as part of a political campaign platform. As stated in Webster Associates v. Town of Webster, "the balance to be struck ... must reconcile the need for impartiality with the right of elected representatives, who may also perform adjudicative functions, to speak their minds on issues of great public concern in their extra-adjudicatory roles." Webster Associates, supra, 112 Misc.2d 396, 447 N.Y.S.2d at 409. However, a line must be drawn somewhere. Here, the Legislature has explicitly prohibited local public officials from representing others before a *384 local government agency acting in a quasi-judicial function, and has implicitly broadened the areas of disqualification which had existed under common-law. The Court holds that the Local Government Ethics Law precludes local public officials from appearing as an advocate before a local public agency and afterwards participating in a official review of that agency's decision.
In conclusion, no matter how impartial Council President Miller may be or attempt to be, the fact remains that his conflict compels his disqualification on the remand. This Court is not unmindful that Council President Miller participated upon the advice of highly competent and reputable counsel; but this Court respectfully parts company with that direction.
And finally, this Court is also not unmindful that the Council action was unanimous. But clearly that action was tainted by the participation of the Council President. As was said literally a century ago, "[t]he infection of the concurrence of the interested person spreads, so that the action of the whole body is voidable." West Jersey Traction Company v. Board of Works of the City of Camden, 56 N.J.L. 431, 440, 29 A. 163 (Sup.Ct. 1894).
NOTES
[1] N.J.S.A. 40A:9-22.5k allows a local government official to represent his or her immediate family's interests before a local government agency. N.J.S.A. 40A:9-22.5h allows a local government employee to represent another if the local government agency is the employer and the representation is within the context of official labor union or similar representational responsibilities.
[2] "Enactment" is defined as the act or action of enacting: passing of a bill by the legislature; something that has been enacted as a law, bill, or statute. Webster's Third New International Dictionary 745 (3d ed. 1986). "Enact" is defined as to enter into public records; to establish by legal and authoritative act, make into law, especially to perform the last act of legislation that gives the validity of law. Ibid.
[3] The Supreme Court notes that the "direct or indirect personal or financial interest" standard of the Municipal Land Use Law codifies the common-law conflict of interest principles, and points out that the use of the word "involvement" in the Local Government Ethics Law may evidence the Legislature's attempt to broaden the areas of disqualification. Wyzykowski v. Rizas, 132 N.J. 509, 523, 529, 626 A.2d 406 (1993) (citing William M. Cox, New Jersey Zoning and Land Use Administration 30 (1993)).